## Case No. 10,389.

### The NYMPH.

### [1 Ware (257) 259.] [1]

District Court, D. Maine. June Term, 1833.[2]

COD-FISHERY LICENSE—ACT OF 1828—UNAUTHORIZED ACT OF TRADE—FORFEITURE.

1. In a libel against a vessel for a forfeiture, the master under whom the alleged illegal act was done, is inadmissible as a witness for the claimant.

[Cited in Patten v. Darling, Case No. 10,812.]

2. Since the act of May 24, 1828 [4 Stat. 312], a vessel licensed for the cod-fishery is not authorized by her license to engage in the mackerel fishery, that act having provided a special license for that business.

[Cited in The Harriet, Case No. 6,099. Doubted in U. S. v. The Reindeer, Id. 16,145. Cited in U. S. v. The Paryntha Davis. Cases Nos. 16,004 and 16,003; The Ocean Bride, Case No. 10,404.]

3. Any act of trade by a licensed vessel, not authorized by her license, under the 32d section of Act Feb. 18, 1793, c. 8 [1 Stat. 316], subjects her to forfeiture.

[Doubted as to its application here in U. S. v. The Reindeer, Case No. 16,145.]

4. The word "trade," in that section of the act, is equivalent to employment or business. The cod-fishery is a trade, and since the act of May 24, 1828, the mackerel fishery is a trade distinct from the cod-fishery, within the meaning of the word in that section of the act of 1793.

[This was a libel against the Nymph (Bibbord and others, claimants).]

The libel in this case was founded on the 32d section of the act of February 18, 1793, for enrolling and licensing vessels for the coasting trade and fisheries. The material facts proved were as follows: In May, 1832, a license was taken out by the owners of the Nymph, for the cod-fishery. This was held till July, when it was exchanged for a license for the mackerel fishery. Under this license the vessel was employed until the beginning of October, when this was exchanged for a new license for the cod-fishery. The facts relied upon as working a forfeiture, took place under the last license. After it was granted, she made two trips

[1] [Reported by Hon. Ashur Ware, District Judge.]

[2] [Affirmed in Case No. 10,388.]

before the close of the fishing season. There was some discrepancy in the testimony, but taking the facts most favorably for the claimants, and as they came from their witnesses, it appeared that while she was sailing under this license, about one half of the time was employed in taking mackerel, and the other half in taking cod.

Mr. Shepley, Dist. Atty., for United States. C. S. Daveis, for claimants.

WARE, District Judge. A preliminary question has been raised in this case as to the admissibility of the master as a witness. As the acts complained of were done while he had the command of the vessel, and under his direction, if they are adjudged to be illegal and draw after them the penalty of a forfeiture of the vessel, he would undoubtedly be responsible to the owners, and a decree of condemnation in this court would be good evidence in an action against him. He is offered as a witness to exempt the vessel from a forfeiture resulting from his own act. He has therefore a direct interest in the result of the suit, and he is offered as a witness to support his own interest. He is therefore clearly inadmissible. The case of The Hope [Case No. 6,678], is directly in point.

The first question which arises upon the merits of the case is whether a vessel, being licensed for the cod-fisheries, is authorized by the license to engage in the mackerel fishery; and if this be decided in the negative, a second one arises, namely, to what penalty she is subject when she engages in this unauthorized employment. The act of February 18, 1793, provides for three forms of licenses only: for the coasting trade, for the cod-fisheries, and for the whale-fishery. Although in a license for the cod-fishery, cod is the only fish mentioned, a liberal construction has been practically given to the license, although I am not aware that it has been sanctioned by any judicial decision. All the bank and coast fisheries have been carried on under the authority of this license. Pollock, hake, and other fish which are cured and dried in the same manner as cod, have always been taken by the fishermen, and no doubt has been raised as to the legality of the employment. The mackerel fishery was also formerly carried on under the same license. But when engaged in this employment, vessels were not considered as entitled to the bounty allowed to those which were employed in the cod-fishery, the duty upon the salt consumed by them in this business being refunded by a drawback, on the exportation of the fish. The legislature seems tacitly to have sustained this liberal construction of the license, for they have allowed a drawback of the duty on salt, on the exportation of pickled fish, although no license was granted to vessels for any other than the cod-fishery, and cod are never cured in this way. When the act

of 1793 was passed, the mackerel fishery could hardly be said to have had an existence as a distinct employment; at least, it was carried on only to a very limited extent. It is only within a few years that it has increased and expanded into a very important branch of business. It was, without doubt, in consequence of this increase, and because that vessels in this employment were not entitled to the cod-fishing bounty, the duty on the salt which they consumed being refunded to them in another manner, that the act of May 24, 1828, was passed, requiring vessels engaged in this branch of the fisheries to take out a special license for that purpose. This act provides that the collectors, on the application of the master or owner of any vessel for that purpose, shall give a license to the vessel for carrying on the mackerel fishery, in the form prescribed by the act of 1793, and it is declared that "all the provisions of that act respecting the licensing ships and vessels for the coasting trade and fisheries, shall be deemed and taken to be applicable to vessels licensed for carrying on the mackerel fishery."

Is a vessel, since the passing of this act, authorized to carry on the mackerel fishery under a cod-fishing license? Is the same latitude to be given to the authority allowed by that license, as was given before the act was passed? I think clearly not. Although the act is silent as to the liberty which had been before allowed under the license, yet from this fact alone, that the act provides a license for this particular branch of business, and by applying to the license the act of 1793, confines vessels under this license to the particular business mentioned in it, it must be taken as the sense of the legislature, that the cod-fishing license should not be construed to include the liberty of engaging in the mackerel fishery, whatever might have been the former practice. On any other construction of the act, it is rendered perfectly nugatory. If the business can still be carried on under the old license for the cod-fishery, then the new license is entirely useless. Such cannot have been the sense of the legislature. The evidence proves beyond a doubt that, under the last license, taken out in October, this was a case of mixed employment. She was part of the time engaged in taking cod, and part of the time in taking mackerel. The case was argued on this admitted state of facts, and it was not considered by the counsel on either side as very material to ascertain the exact proportions in which her time was divided between the two. If, under a cod-fishing license, a vessel may be employed a quarter of her time in the mackerel fishery, I see no reason why she may not one half or three quarters.

The next question is, to what penalty is the vessel subject? The district attorney claims a forfeiture under the 32d section of the act of 1793. By this section of the act, any vessel is made liable to forfeiture which

is employed in any other trade than that for which she is licensed. This vessel being licensed for the cod-fisheries, it is contended by engaging in the mackerel fishery she engaged in another trade than that for which she was licensed. The counsel for the claimants, on the contrary, contends that even on the admission that the mackerel fishery is not included in the license, the employment of the vessel in this business is not engaging in a trade, within the meaning of this section of the act. The word "trade," it is contended, is not here used in its largest sense, as synonymous with employment, but in the restricted sense of an employment in the transportation of merchandise, either for hire or in carrying on the owner's mercantile business; that is, in what is considered in the most usual and popular sense of the word, the trade of the country. The primary signification of the word "trade" is traffic, or buying and selling. But this is not its only sense. It is the appropriate word to designate a mechanical art or mystery, and it is also familiarly used to express a customary or usual occupation. in a mechanical art, in mercantile or in other business, as distinguished from employment in the liberal arts or learned professions. The meaning, therefore, which the word has in any given case. must be learnt from its connection, from the subject-matter of the discourse in which it is used, and, from the apparent intention of the person who uses it. The title of the act in which the word occurs is. "An act for enrolling and licensing ships or vessels to be employed in the coasting trade and fisheries, and for regulating the same." The whole act relates to the manner of procuring vessels' documents, and regulating their employment. After a great variety of particular directions relating to their employment, follows the 32d section, which is the one under consideration. This provides that, "if any such ship or vessel (licensed ship or vessel). shall be employed in any other trade than that for which she is licensed," &c. The form of the expression seems plainly and necessarily to imply that every vessel is licensed for some trade. It applies to every licensed vessel. whether licensed for the coasting trade or fisheries, and the penalty is for her engaging in another trade than that specified in the license. If a vessel under a fishing license is not licensed for a trade. it can with no propriety be said that she engages in another trade than that for which she is licensed. Every distinct business for which a license is provided, must be a trade within the meaning of this act. and every vessel that takes out a license is licensed for a trade. Nor is there any more impropriety of language in applying the word trade to the fishing business than applying it to the coasting business.

But the learned counsel have not, on either side. rested the case solely or principally on the grammatical and philological criticism of the words of the law. It has been, on both sides, largely and ably argued. as a case involving the general policy of our domestic navigation laws. On the part of the claimant it is contended that the object of the legislature in confining vessels by their license to a particular employment, is to protect the revenue against frauds. And although, when a licensed vessel is engaged in business not within the scope of her license, she may forfeit her national privileges as an American bottom, and subject herself to be treated as an unprivileged, or a foreign, vessel, that it was not the intention of the legislature to visit this offence with a forfeiture, except when she engaged in a business by which the revenue might be defrauded. Several sections of the act have been referred to and urged with great power in support of this position. The same argument was urged before the supreme court in the case of The Active, 7 Cranch [11 U. S.] 100; but the court said, that although "a number of the preceding sections of the act furnish much reason for believing that a forfeiture, in a case where the revenue could not be defrauded, might not be contemplated by the legislature, yet they were not so expressed as to control the thirty-second section." The language of this section is so explicit and precise as to admit of but one construction; and it has been repeatedly decided that any act or trade, or the carrying on any business beyond the scope of the license, was followed by forfeiture. U. S. v. The Mars [Case No. 15,723]; The Eliza [Id. 4,346]; The Julia [Id. 7,574]. The proof is that the Nymph, while under a cod-fishing license. was employed part of her time in taking mackerel, not for bait. to be used in pursuing the cod-fishery, but as a distinct and separate business, taking her fish. and curing them for the market. Whatever may have been the practice previous to the act of 1828, as that act provides for a special license for that business. it is clear to my mind that, since the passage of that act. a license for the cod-fisheries does not include the liberty of engaging in the mackerel fishery. The license given pursuant to the act is required to be in the form prescribed by the act of 1793, all the provisions of which are declared to be applicable to it. The mackerel fishery is now as distinct and independent a business or trade, as the cod-fishery, the whale-fishery, or the coasting trade. My opinion, therefore, is. that by engaging in the mackerel fishery, while under a license for the cod-fishery, the Nymph rendered herself liable to forfeiture, as engaging in another trade than that for which she was licensed. Decree of condemnation.

[On appeal to the circuit court the decree of this court was affirmed. Case No. 10.388.]